UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PENNY KOUNTZ, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 06-0515-BH-M |
| MAYER ELECTRIC SUPPLY ) | |
| COMPANY, INC, ) | |
| ) | |
|     Defendant. ) | |

**FINDINGS OF FACT; CONCLUSIONS OF LAW
AND ORDER**

This action is before the Court on defendant's motion for summary judgment (Docs. 10-12). Upon consideration of the motion, plaintiff's response in opposition thereto (Docs. 18-19), defendant's reply (Docs. 20-21), the Court concludes that defendant's motion is due to be granted.

**FINDINGS OF FACT**

Upon consideration of all the evidence of record, both testimonial and documentary, the Court finds that the following facts are either undisputed or uncontradicted by the plaintiff:

1.      Mayer Electrical Supply Company, Inc. ("Mayer") is an electrical supply company that sells electrical equipment through its branches located throughout the Southeast. Loftin Decl. at ¶ 1.

2. The plaintiff, Penny M. Kountz ("Kountz"), contacted Woody DuBruyne ("DuBruyne"), an employee in Mayer's Mobile Branch, sometime in early 2005 to inquire whether Mayer had any openings. Kountz had previously worked with DuBruyne for another employer. (Kountz Depo. at pp. 38-39.) Kountz had been unemployed for approximately one year at the time she called DuBruyne. (*Id*. at pp. 37 and 57; and Exh. 3.)

3. Soon after, in March of 2005, Kountz was contacted by Ken Loftin ("Loftin"), the Branch Manager of Mayer's Mobile Branch. (Kountz Depo. at p. 43; Loftin Decl. at ¶ 6.) According to Kountz, Loftin told her on the phone on March 21, 2005, that his operations manager, Lee Stanford, had turned in his notice and that he wanted to tell her about the position he had coming available. (Kountz Depo. at pp. 44-453; Loftin Decl. at ¶ 6.) Kountz testified that she came in for an interview with Loftin the next day and that he "went over the details of what the job would require [, namely] customer billing, inventory issues, vendor returns, the same type of stuff I had done in the past." (Kountz Depo. at pp. 46-47.) *See also*, Loftin Decl. at ¶ 6 ("I contacted Penny Kountz to inform her that I had a position coming available which would involve only administrative duties and no sales work.").

4. Mayer's Mobile Branch is a small operation and any increase in the total number of employees (the "headcount") requires the approval of an upper-level officer. (Loftin Decl. at ¶ 4.) The position Loftin offered Kountz comprised only the administrative part of the duties of James "Lee" Stanford ("Stanford"), who was resigning

to accept another job.  (Loftin Decl. at ¶ 2-3.)   Stanford had been employed since September 2003, initially as an Inside Sales Associate and then later with additional administrative duties for which Kountz was being considered.  (Kountz Depo. at p. 81; (Loftin Decl. at ¶ 2; Exh. 4.)[1]  Kountz concedes that she has no evidence to refute Mayer's evidence that, at the time of his resignation, approximately seventy percent of Stanford's duties involved inside sales work and the rest involved his administrative duties.  (Kountz Depo. at p. 93; Loftin Decl. at ¶ 2.)[2]  Kountz concedes that she was not hired to do any sort of sales work.  (Kountz Depo. at p. 81.)

   5. Traditionally, the operations "job" has merely constituted extra administrative duties handled by some other person in the Mobile Branch.  (Loftin Decl. at ¶ 3.)  Loftin was considering making those duties a separate full-time position which he called "Operations Manager."  (*Id*.)

   6. It was important to the business of Mayer's Mobile Branch to replace Stanford with another inside salesperson and thus there was no question of leaving that position open.  (Loftin Decl. at ¶ 5.)  However, creating two full-time positions out of Stanford's job and hiring Kountz full-time to perform only Stanford's administrative

---

[1] Exhibit 4 is a document from Mayer's computer records which reflects Stanford's dual role.

[2] To the extent Kountz argues that Stanford was the "full-time Operations Manager" and that he only "helped at the counter when needed," her speculation is insufficient to create a question of fact inasmuch as she concedes that her only exposure to Stanford's job duties occurred during the three days he trained her in her administrative role and that she had no knowledge of how he performed his duties before she came to the Mobile Branch for that training.  *Cf.* Kountz Decl. at ¶ 9 with Kountz Depo. at pp. 48, 49-50, and 80.

duties meant increasing the headcount at the Mobile Branch which required upper-level officer approval.  (Loftin Decl. at ¶ 4-5 and 7.)

7.    Kountz was not considered for Sanford's Inside Sales Associate position because she had no sales credentials.  (Kountz Depo. at pp. 43 and 73; Loftin Decl. at ¶ 6.)  Kountz concedes that she has never done any sales work.  (*Id*.)

8.    Pending officer approval, Loftin assigned Kountz temporarily to work through a staffing agency, which she agreed to do.  (Kountz Depo. at p. 50; Loftin Decl. at ¶ 7.)  The Mobile Branch has a history of filling short-term needs through this staffing agency inasmuch as such temporary work is not reflected on Mayer's payroll and thus it is not considered to increase the headcount.  (Loftin Decl. at ¶ 7.)

9.    Kountz began work on March 28, 2005.  (Kountz Depo. at p. 54-55.)  Because Loftin expected to receive approval quickly, he directed Kountz to fill out a new-hire packet, including an employment application.  (Kountz Depo. at p. 56; Exh. 3; Loftin Decl. at ¶ 7.)  Although Kountz initially asked for a salary of $40,000 annually, she subsequently agreed to take $37,700.  (Kountz Depo. at pp. 49 and 65.)

10.   Kountz grew increasingly dissatisfied working through the staffing agency. (Kountz Depo. at pp. 75-77.)  She would approach Loftin every week to ask about her employment status; each time Loftin reiterated that he was still waiting for officer approval.  (Kountz Depo. at pp. 67-70, 74-76; Loftin Decl. at ¶ 8.)  Kountz did not believe, and does not contend, that Loftin was being untruthful; she believes that he was

genuinely trying to make her a full-time employee.  (Kountz Depo. at pp. 54, 65, 67, 76,78, and 103; Loftin Decl. at ¶ 10.)

11.     After approximately ten weeks on the job, Kountz told Loftin she would no longer work through the staffing agency.  (Kountz Depo. at pp. 106-07; Loftin Decl. at ¶ 8.)   She clocked out early on Friday, June 3, 2005; although she returned briefly the next Monday she never clocked in, and she did not return after that.  (Kountz Depo. at pp. 105-06; Loftin Decl. at ¶ 8.)

12.     After Kountz walked off the job, her administrative duties were assumed by Branch Manager Loftin; no one was hired to replace her.   (Kountz Depo. at p. 117; Loftin Decl. at ¶ 8.)  At no time during the relevant period was upper-level officer approval granted to increase the headcount in the Mobile Branch; the idea for a full-time "Operations Manager" never came to pass. (Loftin Decl. at ¶ 8.)

13.     Mayer hired James Heathcock ("Heathcock') in May 2005 as an Inside Sales Associate, assuming Stanford's sales duties.  (Kountz Depo. at pp. 83-84; Loftin Decl. at ¶ 11.)   Heathcock's hiring did not increase the Mobile Branch's headcount since he assumed only Stanford's primary function of sales.  (Loftin Decl. at ¶ 11.)

14.     On or about November 8, 2005, Kountz filed an EEOC Charge of Discrimination.  (Exh. 5 - EEOC Charge of Discrimination.)  On June 2, 2006, the EEOC issued a Notice of Right to Sue.  (Exh. 6 - EEOC Right to Sue Notice.)  On August 31, 2006, Kountz filed this lawsuit.

## CONCLUSIONS OF LAW

### A.     Standard of Review

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. Rule. Civ. P. 5(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).

When faced with a motion for summary judgment, the non-movant bears the burden of coming forward with sufficient evidence that proves every element of a claim on which such non-movant has the burden of proof. *See*, *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986); *Celotex*, 477 U.S. at 317. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *Peppers v. Coates*, 887 F.2d 1493 (11th Cir. 1989).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . . [o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of Dep't of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004)(citations omitted). A fact is material if, under

applicable substantive law, it might affect the outcome of the case. *Anderson*, 477 U.S. at 242. It is genuine if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).

A defendant moving for summary judgment is not required to disprove every element of the plaintiff's case to prevail. Instead, the defendant is required to demonstrate only that plaintiff will be unable to meet his or her burden of proof on any essential element of his or her claims. As Fed.R.Civ.P. 56 (c) points out, summary judgment should be granted when it becomes apparent that the plaintiff is unable to "make a showing sufficient to establish an element essential to that party' s case, and on which that party would bear the burden of proof at trial." *Andrews v. Trans Union Corp.*, 7 F. Supp. 2d 1056, 1064 (C.D. Cal. 1998) (*citing Celotex Corp. v. Catrett*, 477 U.S. at 322).

Even though claims of employment discrimination often present fact-intensive issues, "the summary judgment rule applies in job discrimination cases just as in other cases." *Chapman v. AI Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc). The Eleventh Circuit has expressly rejected the notion that summary judgment cannot be used in employment discrimination cases because such cases may involve issues of motivation and intent. *See*, *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079 (11th Cir. 2004).

**B.     Sex Discrimination Claim**

As Kountz correctly states, her *prima facie* claim under Title VII requires a showing that: (1) she is a member of a group protected by Title VII; (2) she sought and was qualified for position(s) that the defendant was attempting to fill; (3) despite her qualifications she was rejected; and (4) after her rejection, defendant either continued to attempt to fill the position or in fact filled the position with persons outside plaintiff's protected class.   *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998).  Kountz argues, in the alternative, that she may merely show that she was treated differently in the terms and conditions of her employment as compared to a male employee.  In either case, however, Kountz has failed to meet her burden.

Although it is undisputed that Kountz is a woman and that she is qualified to perform the administrative duties associated with the Operations Manager portion of Lee Stanford's position, that is as far as the evidence of record establishes in this case.  It is equally undisputed that Kountz was not qualified to perform the sales duties previously performed by Lee Stanford, that the Mobile Branch required the services of such a sales employee, that upper-level management had to approve an increase in the employee headcount before two employees could be hired full-time to perform the duties previously handled by Lee Stanford alone, and that no such approval was ever given.  Kountz's misunderstanding about the specific approval required to employ her in the solely administrative capacity as Operations Manager does not constitute evidence of discriminatory animus or pretext.  The evidence of record further establishes that

Kountz's administrative duties were never assigned to James Heathcock, who was hired solely to perform Inside Sales, but were instead merely assumed by Ken Loftin, the Branch Manager.  Consequently, Kountz has failed in every respect to establish either that she was rejected in favor of a male employee or that she was treated differently than any similarly situated male employee.  Mayer is thus entitled to summary judgment in its favor on Kountz's sex discrimination claim.

   Even if it could be said that Kountz had satisfied her *prima facie* burden of production, Mayer is still entitled to summary judgment as Kountz has proffered no evidence which calls into question Mayer's legitimate, non-discriminatory reason for its actions.  It is indeed undisputed that the only reason Kountz was assigned to work through a temporary staffing agency was because upper-level management approval was required to increase the headcount at the Mobile Branch.  It is also undisputed that the Inside Sales duties were more important to the purposes of the Mobile Branch than the administrative functions previously preformed by Lee Stanford in his capacity as Operations Manager.  Kountz was hired for the position of Operations Manager and performed only administrative functions.  Heathcock was hired for the more central duties of Inside Sales Associate.  Neither performed the duties of the other.  Kountz acknowledged that Loftin was frustrated that approval for Kountz's position as Operations Manager had not been obtained and he genuinely expected the full-time position would be approved.  Kountz's conclusory allegations and subjective beliefs are

9

insufficient as a matter of law to create an inference of pretext. *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988).

      C.    **<u>State Law Fraud Claim</u>**

In addition to her claim of sex discrimination, Kountz alleges fraud in the inducement under Alabama common law.  Kountz alleges that Loftin represented to her that she was being hired for a full-time position with benefits, including health insurance, and that she relied upon these representations to her detriment.  Alabama indeed has recognized a cause of action for fraud in the inducement of employment based upon misrepresentations about working conditions.  *Kidder v. AmSouth Bank,* 639 So.2d 1361, 1363 (Ala.1994).  Under Alabama law, in order to prove a fraudulent inducement claim a plaintiff must show that (1) the defendant had a duty to speak the truth; (2) the defendant made a false representation of a material fact; (3) the plaintiff reasonably relied on the false representation; and (4) the plaintiff suffered loss, harm, or damage as a proximate result of the false representation. *See, McGriff v. Minnesota Mut. Life Ins. Co.*, 127 F.3d 1410, 1414 (11th Cir.1997); *Kidder*, 639 So.2d at 1362. "However, the law places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future." *National Sec. Ins. Co. v. Donaldson*, 664 So.2d 871, 876 (Ala.1995).  A fraud claim in which the alleged fraud concerns a future promise, as opposed to a present fact, is known as promissory fraud. *See, McGriff*, 127 F.3d at 1414. "In promissory fraud, the material existing fact that is misrepresented is the defendant's state of mind, when the defendant represents that he

intends to perform some act although he does not in fact intend to perform it." *Spring Hill Lighting & Supply Co., Inc. v. Square D Co., Inc.*, 662 So.2d 1141, 1149 (Ala.1995). *See also, Hale v. Vencore Nursing Centers East, LLC*, 54 F.Supp.2d 1272, 1280 (S.D. Ala. 1999)("failure to perform, alone, is not evidence of intent not to perform at the time the promise was made."). To prove promissory fraud the plaintiff must additionally show that, at the time of the alleged misrepresentation (the promise), the defendant did not intend to do the act or acts promised and intended to deceive the plaintiff. *See, McGriff*, 127 F.3d at 1414; *Goodyear Tire & Rubber Co. v. Washington*, 719 So.2d 774, 776 (Ala.1998).

Kountz conveniently ignores this further requirement of Alabama law regarding intent to deceive. Kountz testified a number of times that she had no reason to believe Loftin was doing anything to deceive her. (Kountz Depo. at pp. 54, 65, 67, 75-76, 78,103, and 121-22.) Kountz testified that Loftin seemed "genuinely enthusiastic" about hiring her. (*Id*. at 54.) Kountz also testified that Loftin seemed "frustrated" when he was not able to obtain officer approval, and she believed Loftin honestly thought he could get her a full-time position. (*Id*. at 76, 121-22; Loftin Decl. at ¶¶ 6 and 10.) Consequently, the evidence of record does not establish the requisite intent to deceive but, instead, demonstrates that Loftin did intend to get approval for a full-time position and did everything he could to obtain such approval. Kountz'z contention that the only approval Loftin was seeking was for the amount of salary she was to be paid is pure sophistry. Kountz knew that some kind of approval was necessary and that, until that approval was

11

given, she had to work through a staffing agency rather than as a full-time employee. Kountz's alleged reliance on any other fact could not, as a matter of law, be deemed reasonable.[3]  By her own admissions, Kountz has proved that no fraud was committed by the defendant.

## CONCLUSION AND ORDER

For the reasons stated above, the Court concludes that no material issues of fact exist and that Mayer's motion for summary judgment is due to be granted.  It is therefore **ORDERED** that Mayer's motion be and is hereby **GRANTED** and that **JUDGMENT** be entered in favor of the defendant, Mayer Electric Supply Company, Inc., and against the plaintiff, Penny M. Kountz, the plaintiff to have and recover nothing of the defendant. Costs are taxed against the plaintiff.

**DONE** this 27th day of June, 2007.

                                                                              s/ W. B. Hand
                                                                 SENIOR DISTRICT JUDGE

---

[3] The reasonable reliance standard replaced the justifiable reliance standard in all Alabama fraud cases filed after March 14, 1997. *See Foremost Ins. Co., Grand Rapids, Mich. v. Parham*, 693 So.2d 409, 421 (Ala.1997).